**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**


**UNITED STATES OF AMERICA**

vs.                                                                 **CASE NO. 4:02CR33-SPM/AK**

**ALBERT M. GAY,**

    **Defendant.**

_____/


## REPORT AND RECOMMENDATION

This cause is before the Court on Defendant's motion to vacate, set aside, or correct sentence.  Doc. 51.  The Government has filed a response, Docs. 57 & 58, and Defendant has submitted his reply.  Doc. 61.  This matter is therefore in a posture for decision.  Having carefully considered the matter, the Court recommends that the motion to vacate be denied.

## BACKGROUND

On June 4, 2002, the grand jury returned a six-count indictment against Defendant, charging him with possession of stolen firearms and possession of firearms by a prior convicted felon.  Doc. 1.  Defendant was taken into custody on June 21, 2002. Doc. 6.

On June 26, 2002, Defendant appeared for first appearance and arraignment before United States Magistrate Judge William C. Sherrill, and George Blow was appointed as counsel.

Docs. 7 & 10.  A trial date was set for August 19, 2002.  *Id.*  On August 2, 2002 the trial date was continued to September 16, 2002, and on September 12, 2002, the date was continued to October 15, 2002, both at Defendant's request. Docs. 16 & 24.  The second continuance followed the Government's Fed. R. Evid. 404(b) Notice of Intent to Use Other Crimes, Wrongs, or Acts.  Doc. 19.

On October 1, 2002, the grand jury returned a superceding indictment against Defendant. Doc. 27.  The Superseding Indictment was slightly different in that it corrected cause numbers for prior convictions in Counts 2, 4, and 6 and changed the date of offense and the firearm at issue in Counts 5 and 6.  *Id.*  On October 8, 2002, Defendant pled guilty as charged on all counts. Doc. 36.  At the plea hearing, Defendant was specifically advised that by entering a plea of guilty he waived any defenses that he might have:

> You have to go to trial to put on your defenses, this is, if you've got something that you can argue or some evidence you want to put on.  I don't know whether you do or don't.  But all I'm saying is, is that if you don't go to trial, if you enter a guilty plea, then your opportunity for putting on defenses is over.

Doc. 54 at 13.  Defendant acknowledged his understanding of this waiver.  *Id.*  The Court then turned to the factual basis for the plea.  The factual basis did not specifically outline the prior convictions set forth in the superseding indictment, but it did state:

> On February 3, 1998, prior to the defendant's possession of firearms described above, the defendant was convicted in Leon County, Florida, of seven felony counts of burglary of dwelling, four separate instances which encompassed four felony convictions for grand theft.  Each of these convictions was punishable by imprisonment exceeding one year.

Doc. 34.  Defendant read and signed the factual basis, and although the Court did not directly question him regarding the prior convictions, he agreed that if the case were to go to trial, the

Government had "evidence that could prove these facts to a jury[.]" Doc. 54 at 18. Next, the Court advised Defendant regarding sentencing:

> THE COURT: The sentencing commission guidelines will apply in this case. What that means is is that there will be a pretrial sentence report prepared. The report will gather personal data about you and your criminal history and the facts...underlying the charge, and then will compute a range of sentences, and then Judge Mickle will have the authority to impose a prison sentence somewhere between the minimum and the maximum of the...sentencing guideline range. Do you understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: [U]ntil this report is prepared, do you understand that neither you nor the government nor your attorney will be able to know for sure what that guideline range is going to be?
>
> THE DEFENDANT: Yes, sir.
>
> * * *
>
> THE COURT: Have you talked about sentencing guidelines with Mr. Blow?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: So what I'm trying to say is that if he's tried to make a prediction about the guideline range now, that it's just a guess at this point. It's not a promise. Do you understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: [I]n some circumstances the district judge...has the authority in limited circumstances to impose a sentence that is more severe or less severe than the sentence called for by the guidelines. Do you understand that fact?
>
> THE DEFENDANT: Yes, sir.

**4:02cr33-spm/ak**

* * *

| | |
|---|---|
| THE COURT: | If the sentence is more severe than you expect, you will still be bound by your guilty plea and you will have no right to withdraw it.  Do you understand that? |
| THE DEFENDANT: | Yes, sir. |

*Id*. at 22-24.

Defendant's counsel then summarized the terms of the plea agreement, which the Court followed with a series of questions:

| | |
|---|---|
| MR. BLOW: | [T]he agreement that he's entered into is...what I've described to him as a standard plea and cooperation agreement in this district; that he is pleading guilty to all the charges in this case; that he faces sentencing in accordance with the guidelines and the statutes; and there is no specific agreement regarding any sentence.  He will be given the opportunity to cooperate, and that if he cooperates in accordance with this agreement, and doesn't do anything to violate the terms of the agreement....Then...in that event, at the sole discretion of the United States Attorney, they may file a motion under Rule 5K1, substantial assistance, or if it's post-sentencing, under Rule 35, which would then free up Judge Mickle to impose a sentence that was less than the sentencing guidelines and/or less than the statutory minimums. |
| | He understands, and I've explained to him, that that is the sole discretion of the U.S. Attorney, and there's very little, if anything, that I can do about it if they don't do it....And that ultimately the sentence to be imposed is that determined by the court, and that there's no specific recommendation in here, and no promises have been made regarding what sentence he's going to get.  And I might also add a little beyond this, I've explained to him that it's quite likely that they will not be able to bring a new case against some other individuals they're interested in prior to sentencing.  And if that happens, then he will be sentenced in accordance with the guidelines and the minimum mandatories under the statutes, and then it will have to |

**4:02cr33-spm/ak**

    come by a Rule 35 subsequent to sentencing for him to get the benefit of reduction.

    So I've explained to him, and I would like for him to affirm it on the record, that he understands when we get in sentencing 70 days or so from now, it is in all likelihood that they will not have a substantial assistance certification ready at that point and that it may take as much as a year before that process is finished.

THE COURT: Okay, Mr. Gay, Mr. Blow has just described what he understands the plea agreement does. Did he tell me accurately what the plea agreement does?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand the plea agreement the same way that Mr. Blow does?

THE DEFENDANT: Yes, sir.

THE COURT: Did you have a chance to fully talk to him about the plea agreement and all the terms and conditions of it?

THE DEFENDANT: Yes, sir.

THE COURT: Did he explain everything to you that's in this written agreement?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. Mr. Canova, would you tell me whether your understanding of the plea agreement is the same as Mr. Blow's?

MR. CANOVA: My understanding is the same as Mr. Blow's. We have agreed to listen to a proffer given by the defendant and evaluate that proffer for purposes of a possible 5K1 filing. However, at this time, that decision has not been made one way or the other.

                              \* \* \*

**4:02cr33-spm/ak**

| | |
|---|---|
| THE COURT: | Mr. Gay, has anybody made you any secret promise that's not in this written agreement that you're counting on? |
| THE DEFENDANT: | No, sir. |
| THE COURT: | Anything outside this agreement? Mr. Blow, can you assure me there are no secret promises? |
| MR. BLOW: | I can and will. |
| THE COURT: | Mr. Canova, can you? |
| MR. CANOVA: | Yes, sir. |
| THE COURT: | Mr. Gay, let me talk to you about the substantial assistance process. Mr. Blow has accurately described it to you, and I want to repeat some of the things he said.<br><br>This plea agreement contemplates that you waive your Fifth Amendment right and that you plan to give truthful information to the government which might help the government in the prosecution of other people. |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Is that what you intend to do? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Is it? Okay. Now, the government then in this process will consider the information and try to use it. That's the way this works. And when they're finished with the process, they then will determine whether or not they believe what you've done is substantial. That means it has to be important to the government....[W]hen they made the decision whether it's substantial, then they decide whether to file a motion to help you out with your sentence. Are you with me so far? You understand that part? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | They say in this plea agreement that their decision to do this, whether they do it or not, is within their sole discretion. Do you understand what that phrase means, the sole discretion of the United States? |

**4:02cr33-spm/ak**

>THE DEFENDANT:   Yes, sir.
>
>THE COURT:   It means–I'm paraphrasing it.  It means they call the shot and nobody can look over their shoulder and make them do differently.  Do you understand that?
>
>THE DEFENDANT:   Yes, sir.
>
>THE COURT:   So if they don't file a substantial assistance motion, even though you gave them information, even though you believe you provided substantial assistance and they don't do it, then Mr. Blow is not going to have the ability to obtain relief or remedy for you.  And as much as Judge Mickle might want to do it, he will not be authorized to make them file the motion.  Do you understand that?
>
>THE DEFENDANT:   Yes, sir.
>
>* * *
>
>THE COURT:   [E]ven if they file this substantial assistance motion, do you understand that it's still left up to Judge Mickle as to what to do about it?  That he might not go down as low as you were hoping he would do.  Do you understand that?
>
>THE DEFENDANT:   Yes, sir.

*Id*. at 24-31.

Finally, the Court addressed Defendant regarding the voluntariness of his plea and his satisfaction with counsel:

>THE COURT:   Has anybody used any force or threats or pressure on you or anyone that you love or care about...to force you to plead guilty?
>
>THE DEFENDANT:   No, sir.
>
>* * *
>
>THE COURT:   Have you had enough time to talk with Mr. Blow to discuss your case fully?

**4:02cr33-spm/ak**

> THE DEFENDANT: Yes, sir.
>
> THE COURT: Have you in fact done so?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Have you discussed any of the possible defenses that you might have with Mr. Blow?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And ways that you might try to beat the case if you went to trial?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Do you feel you need anymore time to talk with Mr. Blow before I wind things up here and conclude the hearing?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Are you satisfied with the way Mr. Blow has represented you in this case?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Do you have any complaint against him or anybody from his office as to the manner in which they've represented you?
>
> THE DEFENDANT: No, sir.

*Id*. at 31-32.  Thereafter, the magistrate judge recommended that Defendant's change of plea be accepted, and on October 18, 2002, Judge Mickle agreed with that recommendation.  Doc. 40.

On February 18, 2003, Defendant was sentenced to 120 months imprisonment and 3 years supervised release on counts 1, 3, and 5 and 180 months imprisonment and 5 years supervised release for counts 2, 4, and 6, with the sentences to run concurrently.  Docs. 46 & 47.  Defendant did not appeal.

**4:02cr33-spm/ak**

On February 23, 2004, Defendant filed a Motion to Vacate, Set Aside or Correct Sentence. Doc. 51. In his motion, Defendant claims that counsel was ineffective for (1) failing to challenge the thirty-day period for filing the indictment, (2) failing to challenge the indictment on the grounds it claimed he aided and abetted himself, (3) failing to challenge the prior convictions used to enhance his sentence, and (4) failing to protect Defendant from entering an unknowing plea. *Id*.

The government filed a response on June 2, 2004. Doc. 57. According to the Government, the indictment was timely filed and the superceding indictment merely corrected a case number for a prior conviction and the make of a gun. *Id*. at 3. Furthermore, Defendant cannot establish prejudice to his defense by the delay, and he was granted two trial continuances before pleading guilty. *Id*. As to Defendant's second claim, the Government states Defendant was not charged with aiding and abetting himself nor was he even charged with a substantive offense of aiding and abetting. *Id*. at 5. In addition, the Government maintains that Defendant cannot attack the validity of his prior convictions because he was represented by counsel. The government also argues that Defendant was properly treated as an Armed Career Criminal. *Id*. Finally, the Government states that Defendant's plea claims were specifically addressed in the Plea and Cooperation Agreement and in Defendant's colloquy with the Court at the plea hearing.

*Id*.

**DISCUSSION**

**4:02cr33-spm/ak**

Because Defendant's claims involve allegations that his counsel was ineffective, a consideration of *Strickland v. Washington*, 466 U.S. 668 (1984), is appropriate before the Court examines each claim individually.

To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686. The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697. The court need not address the adequacy of counsel's performance when a defendant fails to make a sufficient showing of prejudice. *Id.; see also Tafero v. Wainright*, 796 F.2d 1314, 1319 (11th Cir. 1986).

With regard to the performance prong of *Strickland*, a defendant must provide factual support for his contentions that counsel's performance was constitutionally deficient. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987). The court must consider counsel's performance in light of all of the circumstances at that time and indulge in a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance. *Strickland*, 466 U.S. at 689-90. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). "An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption...that [counsel] did what he should have done and that he exercised reasonable professional judgment." *Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (en banc), *cert. denied*, 531 U.S. 1204 (2001). "The relevant question is not whether counsel's choices were strategic, but whether they were

**4:02cr33-spm/ak**

reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence–which is also constitutionally protected–and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001). "To uphold a lawyer's strategy, [the Court] need not attempt to divine the layer's mental processes underlying the strategy." *Chandler*, 218 F.3d at 1315 n.16. "No lawyer can be expected to have considered all of the ways [to provide effective assistance]." *Id*. Quite importantly,

> If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on. The lawyer's strategy was course A. And [the Court's] inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id*. Additionally, prejudice is established only with a showing that the result of the proceeding was fundamentally unfair or unreliable. *Lockhart v. Hill*, 506 U.S. 364, 370 (1993).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail...are few and far between." *Chandler*, 218 F.3d at 1313 (11th Cir. 2000). This is because the test is not what the

**4:02cr33-spm/ak**

best lawyers would have done or even what most good lawyers would have done, but rather whether a reasonable lawyer could have acted in the circumstances as defense counsel acted. *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000), *cert. denied*, 534 U.S. 903 (2001).

     I.     Failure to challenge thirty-day period for filing indictment.

Under the Speedy Trial Act, the Government must file an indictment within 30 days of a defendant's arrest. 18 U.S.C. § 3161(b). In Defendant's view, the Government violated the Speedy Trial Act when it failed to file the superseding indictment within 30 days of his arrest on the original indictment, and counsel was ineffective for failing to challenge the untimely filing of the superseding indictment. This allegation is without merit, as a "superseding indictment that issues more than 30 days after the arrest, but before the original indictment is dismissed, does not violate § 3161." *United States v. Mosquera*, 95 F.3d 1012, 1013 (11th Cir. 1996). Consequently, counsel did not act deficiently in failing to file a frivolous motion to dismiss.

     II.     Failure to challenge indictment on grounds it claimed Defendant aided and abetted himself.

In addition to the substantive firearms offenses, Defendant was charged as a principal pursuant to 18 U.S.C. § 2, which provides: "Whoever commits an offense against he United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." According to Defendant, the indictment is defective because "it affirmatively charged him with aiding and abetting, but failed to charge any person other than movant of the principal offense." Thus, in Defendant's view, counsel was ineffective for failing to challenge the indictment on this ground.

Section 2 does not establish a separate crime, "but rather an alternative charge that permits one to be found guilty as a principal for aiding or procuring someone else to commit the

**4:02cr33-spm/ak**

offense." *United States v. Martin*, 747 F.2d 1404, 1407 (11th Cir. 1984). "It allows a jury to find one guilty of an offense even though he did not commit all the acts constituting the elements of the substantive crime aided." *Id*. Although a defendant "cannot aid or abet himself," *id*., if he personally commits the offense, he is punishable as a principal. *United States v. Hornaday*, 392 F.3d 1306, 1313 n.3 (11th Cir. 2004). This, according to the Eleventh Circuit, is an "obvious truism."

In *United States v. Pearson*, 667 F.2d 12 (5th Cir. 1982), the defendant, Pearson, was indicted for importing heroin, both as a principal and as an aider and abetter of a co-defendant. *Id*. at 13. At the close of its case, the Government dismissed the co-defendant because of insufficient evidence. *Id*. The court nevertheless instructed the jury on aiding and abetting, and the jury convicted him on all counts. *Id*.

In rejecting Pearson's § 2255 claim that he was denied a fair trial because of the court's instructions on aiding and abetting, the court found:

> The crime was importing heroin. It cannot be said that the fact that [the co-defendant] was dismissed meant no crime had been committed, because there was ample evidence that a crime was committed. Heroin was brought into this country illegally. This is the crime with which Pearson is charged, not some separate statutory offense called "aiding and abetting."
>
> When [the co-defendant] was dismissed, Pearson stood alone before the jury accused of the crime of importing heroin into this country. The government had to prove each element of the crime, but thanks to 18 U.S.C. § 2, it did not have to show that Pearson committed the acts constituting each element.
>
> * * *
>
> Unlike conspiracy, [the co-defendant's] participation was not an element of the crime in question....[T]o sustain this conviction, the evidence and reasonable inferences therefrom must show that defendant knew that a narcotics distribution was occurring, that he associated himself with the act, that he participated in it with a desire that it be accomplished, and that he committed some overt act

**4:02cr33-spm/ak**

> designed to make it a success.  Defendant must have shared the criminal intent or purpose and assisted in the accomplishment of that purpose.
>
> Because "all indictments for substantive offenses must be read as if the alternative proved by 18 U.S.C. § 2 were embodied in the indictment," the words "aided and abetted each by the other" in Pearson's indictment were wholly extraneous and had no effect on the crime charged, that of importing heroin.  They did not add an offense to the indictment, nor did they limit the charge of importing heroin.

*Id*. at 14-15.

The same is true here.  Defendant was not charged with aiding and abetting himself, but with having committed, as a principal, several substantive firearms crimes, and counsel was not ineffective for failing to raise this issue.

    III.    Failure to challenge the prior convictions used to enhance sentence.

In this ground, Defendant charges that counsel should have challenged his state court convictions because they were obtained without the court informing him of his rights as a juvenile and ensuring that he understood his waiver of those rights.  As Defendant acknowledges, he had legal representation in state court, and thus, this claim is foreclosed by *Custis v. United States*, 511 U.S. 485, 491 (1994), which allows collateral attack on prior convictions used as Armed Career Criminal enhancements only where the defendant was not represented by counsel in the prior proceedings.

    IV.    Failure to protect Defendant from entering unknowing plea.

Finally, Defendant argues that counsel was ineffective for failing to protect him from entering an involuntary plea where he was misled "to believe he would be entitled to a rule 35 and/or under 5K1.1 of the guidelines."  Furthermore, he argues that counsel failed to explain the meaning and consequences of the armed career criminal enhancement.

**4:02cr33-spm/ak**

The law is well established that a "guilty plea means something. It is not an invitation to a continuing litigation dialogue between a criminal defendant and the court." *Murray v. United States*, 145 F.3d 1249, 1254 (11th Cir. 1998). In fact,

> the representations of the defendant, his lawyer, and the prosecutor at...a [plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

In this case, the Court and counsel were very thorough in reviewing with Defendant the issues that he now contests. Thus, his contentions that counsel misled him and failed to advise him properly "are contentions that in the face of the record are wholly incredible." The Court and counsel meticulously explained on the record the downward departure process and the Government's discretion in that regard. Defendant acknowledged his understanding and never indicated otherwise. On two occasions during the plea colloquy, the Court advised Defendant of the sentence he faced on each count of the superseding indictment, and again, although he was given the opportunity to advise the Court of any misunderstanding he had about the possible penalties involved, he did not express any equivocation about the ramifications of his change of plea. Therefore, this ground for relief is also not well taken.

## CONCLUSION

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant's motion to vacate, set aside, or correct sentence, Doc. 51, be **DENIED**.

**IN CHAMBERS** at Gainesville, Florida, this 27th day of June, 2006.

**4:02cr33-spm/ak**

<u>S/ A. KORNBLUM</u>
**ALLAN KORNBLUM
UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

**4:02cr33-spm/ak**